UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| BENJAMIN L. QUARLES | CIVIL ACTION NO. 5:22-CV-1326 |
| VERSUS | JUDGE |
| CHRIS MCCLARAN, CHRIS HAMMONTREE, STEVE CROPPER, AND THE CITY OF MINDEN, LOUISIANA | MAGISTRATE JUDGE |

## **COMPLAINT**

THE ORIGINAL COMPLAINT OF Benjamin L. Quarles, a major citizen of the State

of Louisiana who resides in Webster Parish, Louisiana, who respectfully avers as follows:

### **JURISDICTION AND VENUE**

1.

This action arises under the Civil Rights Act of 1871 (42 USC §§ 1983, 1988) as

later more fully appears, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to

the United States Constitution.

2.

This Court has jurisdiction under 28 USC § 1331 and § 1343.  The state law claims

for relief are within the supplemental jurisdiction of this Court, pursuant to 28 USC § 1367.

3.

All events referred to in this Complaint occurred within the Western District of

Louisiana.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**PARTIES**

4.

Plaintiff Benjamin Quarles is a competent adult, who was a non-violent male and posed no threat to anyone but fell prey to wrongful arrest, excessive force, and police brutality, which was perpetrated by defendants Chris McClaran and Chris Hammontree of the Minden Police Department on February 1, 2022.

5.

Defendant Chris McClaran is a citizen of the State of Louisiana, and, upon information and belief, a resident of Webster Parish, Louisiana.  Defendant McClaran is a police officer employed by the Minden, Louisiana Police Department.

6.

Defendant Chris Hammontree is a citizen of the State of Louisiana, and, upon information and belief, a resident of Webster Parish, Louisiana.  Defendant Hammontree is a police officer employed by the Minden, Louisiana Police Department.

7.

Defendant Steve Cropper is a citizen of the State of Louisiana, and upon information and belief, a resident of Webster Parish, Louisiana.  Defendant Cropper is the Chief of Police for the City of Minden, as well as the policy maker for the Minden Police Department.

8.

Defendant City of Minden, Louisiana is a political subdivision of the State of Louisiana, and at all times relevant herein, the public employer of defendants McClaran, Hammontree, and Cropper of the Minden Police Department.

9.

At all times pertinent hereto, defendants, in doing all of the things alleged, acted under color of their authority as police officers as such and under color of the statutes, regulations, customs, and usages of the State of Louisiana and the town of Minden, Louisiana.

10.

Defendants McClaran, Hammontree, and Cropper are being sued herein in their individual capacities.

11.

Defendant Cropper is also being sued in his official capacity as police chief and policy maker for the Minden Police Department.

**FACTS**

12.

On the morning of February 1, 2022, Mr. Quarles was running errands in downtown Minden, Louisiana, after dropping his wife off at a medical facility for treatment.

13.

Mr. Quarles, a 57 year-old Black family man and school bus driver for the Webster Parish School Board with no criminal record, was driving his own car in downtown Minden at approximately 11:30 on a Tuesday morning.  He was driving southeast on Pine Street. As Mr. Quarles approached Pine Street's intersection with Main Street, he stopped at a red light.  While appropriately and legally stopped at the red light at the intersection of Pine Street and Main Street, Mr. Quarles' car was struck from behind by an 18-wheeler dump truck.  The impact from the collision pushed Mr. Quarles' car into the intersection.

14.

Relating to the automobile accident, Mr. Quarles violated no traffic laws.  The investigating officer found that Mr. Quarles committed "No violation."

15.

Immediately following the accident, Mr. Quarles stayed in his vehicle.  The accident had physically injured Mr. Quarles, in addition to shaking him up emotionally.

16.

Shortly after the accident, defendants McClaran and Hammontree arrived at the scene, acting in their capacities as Minden Police Officers.

17.

At some point after they arrived, defendants McClaran and Hammontree approached Mr. Quarles' car.  Mr. Quarles, who was still shaken up from the accident, lowered his drivers' side window to speak to defendant McClaran.  Mr. Quarles, who was wearing a mask and gloves due to his fear of contracting Covid-19 (Mr. Quarles' wife is a dialysis patient with numerous underlying medical conditions and he was particularly concerned about getting Covid-19 and then giving it to his vulnerable wife), politely asked defendant McClaran not to get too close, because defendants McClaran and Hammontree were not wearing masks and Mr. Quarles feared being exposed to Covid-19.  (This was occurring during the wave of the Covid-19 Omicron variant sweeping through the United States.)

18.

Defendant McClaran then, contrary to the polite request of Mr. Quarles that he not get too close, opened Mr. Quarles' drivers' side door all the way and stood near Mr.

Quarles.  After opening Mr. Quarles' door, and without any provocation whatsoever, defendant McClaran begin addressing Mr. Quarles in an aggressive manner and immediately displayed an aggressive and hostile attitude and tone with Mr. Quarles. Defendant McClaran, in an aggressive, loud, derisive, and sarcastic tone of voice, asked Mr. Quarles, "Are you hurt?" and "Did you bump your head?" or words to that effect.

19.

Mr. Quarles responded to defendant McClaran that, indeed, he was injured and in severe pain, and that he needed time to collect himself.  At that point, defendant McClaran became more aggressive with Mr. Quarles, shouting at Mr. Quarles: "A minute?!  You need a minute?! One minute?!" or words to that effect.

20.

In response to defendant McClaran's aggressive words and conduct, and in fear for his safety, Mr. Quarles began raising his window and attempted to close his car door.

21.

Importantly, at no time did neither defendant McClaran nor defendant Hammontree have authority by law to lawfully arrest or detain Mr. Quarles, nor were they authorized by law to seize any property belonging to Mr. Quarles.

22.

At that point, without any attempt whatsoever to negotiate with Mr. Quarles, defendant McClaran forced Mr. Quarles' drivers' side door all the way open.  Because he was afraid of being exposed to the Covid-19 virus, Mr. Quarles leaned away from defendant McClaran and put both of his hands up, with his palms facing defendant McClaran (*i.e.*, the universal sign of nonaggression/surrender).  Defendant Hammontree

then screamed that if Mr. Quarles did not get out of the car, he would be sprayed with pepper spray.   Before Mr. Quarles (who was in pain and in shock from the accident and his treatment by defendants McClaran and Hammontree) could react, defendant Hammontree sprayed chemicals into Mr. Quarles' eyes.   Defendants McClaran and Hammontree then physically seized Mr. Quarles, yanking him bodily from his car.

23.

After defendants McClaran and Hammontree yanked Mr. Quarles from his car, they forcibly threw Mr. Quarles to the ground and handcuffed him, further injuring him. Defendants McClaran and Hammontree, then, again without Mr. Quarles' consent, removed Mr. Quarles' wallet from his pocket, as Mr. Quarles writhed on the ground in agony.   At no time prior to seizing Mr. Quarles' wallet did either defendant (or anyone else) ask Mr. Quarles for his drivers' license, insurance information, or registration. Although Mr. Quarles' drivers' license was in wallet, Mr. Quarles had placed his insurance information and registration on the passenger seat of his car prior to the time the officers arrived at the scene.

24.

Prior to seizing Mr. Quarles, neither defendant (nor anyone else) informed Mr. Quarles that he was under arrest or that he was being detained, for any reason. Moreover, at the time Mr. Quarles was seized by the defendants, he had committed no crime and neither defendant possessed probable cause that Mr. Quarles had committed any crime.

25.

At no time, either before or after his arrest, did Mr. Quarles present any threat of harm (immediate or otherwise) to defendants McClaran or Hammontree or to any third person.

26.

After Mr. Quarles was forcibly thrown to the ground, defendants left him lying on the ground, handcuffed and injured, with his chemical-soaked mask on his face.

27.

Mr. Quarles was left lying, handcuffed and injured, on the ground until the ambulance arrived.  Mr. Quarles was transported to a local hospital emergency room for treatment.  The entire time that Mr. Quarles was in the hospital, he was "guarded" by two Minden police officers.

28.

At the hospital, Mr. Quarles was treated for his injuries from both the car accident and defendants' unnecessary, improper, and excessive use of force against him.  When Mr. Quarles was released from the hospital, he was again handcuffed by Minden police officers, who transported him to the Minden Police Department headquarters, where he was booked and jailed in a small cage.  Mr. Quarles remained jailed until his brother was able to bail him out, some time later.

29.

After his release from jail, Mr. Quarles' car was returned to him.  Upon its return to him, Mr. Quarles' car had been completely ransacked, presumably because it had been

"searched."  In addition, a $30-$40 Circle K gift card, that had been in Mr. Quarles' car prior to his arrest, had been taken.

30.

Mr. Quarles was charged with a violation of Louisiana Revised Statutes 14:108, entitled "Resisting an Officer."   This charge is known by the common parlance as "resisting arrest."

31.

At his initial court appearance, on March 2, 2022, the prosecutor orally moved to dismiss the charges against Mr. Quarles prior to any plea.  The judge orally granted the prosecutor's motion, dismissing the charges against Mr. Quarles.

32.

Louisiana Revised Statutes 14:108, entitled "Resisting an Officer," reads as follows:

   A.   Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

   B.   (1)   The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

      (a)   Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

      (b)   Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

(c)     Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

(d)     Congregation with others on a public street and refusal to move on when ordered by the officer.

(e)     Knowing interference with a police cordon resulting from the intentional crossing or traversing of a police cordon by an unauthorized person or an unmanned aircraft system (UAS). The cordoned area includes the airspace above the cordoned area.

    (i)     For purposes of this Subparagraph, "police cordon" means any impediment or structure erected or established by an officer for crowd or traffic control, or to prevent or obstruct the passage of a person at the scene of a crime or investigation.

    (ii)     "Impediment or structure" includes but is not limited to crime scene tape, rope, cable, wire or metal barricades, or the posting of uniformed officers or other personnel otherwise identifiable as law enforcement officers.

    (iii)     "Unmanned aircraft system" shall have the same meaning as provided by R.S. 14:337(B).

    (iv)     If the flight of a UAS into the cordoned area endangers the public or an officer's safety, law enforcement personnel or fire department personnel are authorized to disable the UAS.

(2)   The word "officer" as used herein means any peace officer, as defined in R.S. 40:2402, and includes deputy sheriffs, municipal police officers, probation and parole officers, city marshals and deputies, and wildlife enforcement agents.

C.     Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.

33.

As is set out in more detail below, Mr. Quarles clearly did not violate Louisiana Revised Statute 14:108 and defendants did not possess any probable cause to believe that Mr. Quarles had violated Louisiana Revised Statute 14:108 prior to or at the time he was seized.

**COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS MCCLARAN AND HAMMONTREE FOR WRONGFUL ARREST AND/OR SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

34.

The preceding paragraphs are incorporated by reference.

35.

As a result of the events of February 1, 2022, Mr. Quarles was jailed for a crime that he did not commit.

36.

The conduct of defendants McClaran and Hammontree violated Mr. Quarles' clearly established right to be free from an unreasonable seizure under the Fourth Amendment of the United States Constitution, as secured by 42 U.S.C. §§ 1981, 1983, 1985, and 1988.

37.

Acting under color of state law, defendants McClaran and Hammontree knowingly, recklessly, and with deliberate indifference to and callous disregard for Mr. Quarles' rights, unlawfully arrested Mr. Quarles in the absence of probable cause and though Mr.

Quarles had committed no crime and defendants lacked any probable cause to arrest Mr. Quarles.

38.

Defendants McClaran's and Hammontree's arrest of Mr. Quarles was both objectively and subjectively unreasonable, given the circumstances.  No reasonably competent police officer would have believed that probable cause existed to justify the arrest of Mr. Quarles.

39.

On February 1, 2022, Mr. Quarles committed no crime.  On February 1, 2022, neither defendant possessed probable cause to arrest Mr. Quarles for any crime. Specifically, defendants did not possess any probable cause to arrest Mr. Quarles for the crime of "resisting an officer," as that crime is established by Louisiana R.S. 14:108.

40.

To establish that a police officer violated a person's constitutional rights by arresting him, a plaintiff "must show that the officers lacked probable cause."  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).  "A warrantless arrest must be based on 'probable cause.'  Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Id.*

41.

"[U]nder Louisiana law, a person commits the offense of resisting arrest only if he resists a 'lawful arrest;' that is, an arrest supported by probable cause."  *Id.*, citing *State*

*v. Lindsay*, 388 So.2d 781, 782 (La. 1980) ("It is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest.").  Moreover, "absent probable cause as of the moment of arrest, no *subsequent* resistance would violate Louisiana law, as the statute only prohibits resisting a '*lawful* arrest.'"  *Brown v. Lynch*, 524 Fed.Appx. 69, 74 (5th Cir. 2013).  Nevertheless, Mr. Quarles never resisted in any way.

42.

"Essential to a conviction under R.S. 14:108 is the defendant's knowledge of his arrest or impending detention."  *State v. Knowles*, 40,324 (La.App. 2 Cir. 12/30/05), 917 So.2d 1262, 1273, citing *State v. Nix*, 406 So.2d 1355 (La.1981).

43.

Prior to defendants McClaran and Hammontree seizing Mr. Quarles, Mr. Quarles was not informed or warned that he was either arrested or going to be arrested.

44.

At the time of Mr. Quarles' arrest (and before and after his arrest), defendants McClaran and Hammontree lacked any probable cause for the arrest of Mr. Quarles.  As a result of Mr. Quarles' wrongful arrest, Mr. Quarles has suffered emotional injuries and severe damage to his sterling, hard-earned reputation.

## COUNT II – 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS MCCLARAN AND HAMMONTREE FOR USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

45.

The preceding paragraphs are incorporated by reference.

46.

The conduct of defendants McClaran and Hammontree violated Mr. Quarles' clearly established right to be free from the use of excessive force against him under the Fourth Amendment of the United States Constitution, as secured by 42 U.S.C. §§ 1981, 1983, 1985, and 1988.

47.

Acting under color of state law, defendants McClaran and Hammontree knowingly, recklessly, and with deliberate indifference to and callous disregard for Mr. Quarles' rights, unlawfully subjected Mr. Quarles to unreasonable and excessive force, even though Mr. Quarles had committed no crime and defendants lacked any probable cause to arrest Mr. Quarles.

48.

As a result of defendants McClaran's and Hammontree's use of excessive force on him, Mr. Quarles sustained bodily injuries and emotional injuries.

49.

Defendants McClaran and Hammontree applied the following objectively unreasonable and excessive force to Mr. Quarles: (1) spraying chemicals into Mr. Quarles' eyes and face, (2) forcibly removing Mr. Quarles from his car, (3) throwing Mr. Quarles to the ground, and (4) leaving Mr. Quarles lying on the ground, with a chemical-soaked mask on his face, among other things.

50.

The amount of force used by defendants McClaran and Hammontree was objectively unreasonable.   Factors to be considered in evaluating the objective

reasonableness of force applied include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  All of these factors overwhelmingly lead to the conclusion that the force used by defendants McClaran and Hammondtree was objectively unreasonable.

51.

As to the "severity of the crime" factor, Mr. Quarles had committed no crime at the time defendants McClaran and Hammontree used force against him.  Instead, Mr. Quarles had been the innocent, fault-free victim in a rear-end automobile, 18-wheeler dump truck rear end collision.  This factor weighs overwhelmingly in Mr. Quarles' favor.

52.

As to the "immediate threat to the safety of the officers or others" factor, at the time defendants McClaran and Hammontree used force against Mr. Quarles, he was not an immediate threat to the safety of the officers or anyone else.  (In fact, Mr. Quarles had raised both of his hands with his palms facing defendant McClaran, the universal sign of non-aggression/surrender.)  Mr. Quarles was sitting in the driver's seat of his car, with his car in park, and had given no indication that he would flee or use the vehicle as a weapon. *See Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).  In addition, prior to their use of force, Mr. Quarles had engaged the officers politely and had engaged in no aggressive or hostile language or conduct with defendants McClaran and Hammontree, or anyone else.  Moreover, defendants McClaran and Hammontree knew that Mr. Quarles was injured as a result of being rear-ended by an 18-wheeler dump truck shortly before the officers arrived at the scene.  This factor weighs overwhelmingly in Mr. Quarles' favor.

53.

As to the "actively resisting arrest or attempting to evade arrest by flight", at the time defendants McClaran and Hammontree used force against Mr. Quarles, he was not actively resisting arrest or attempting to evade arrest by flight.  As noted above, prior to applying force to Mr. Quarles, neither defendant warned Mr. Quarles nor alerted him to the fact that he was going to be arrested, nor did either defendant (McClaran or Hammontree) make any attempt to negotiate with Mr. Quarles before applying great force.  Thus, Mr. Quarles was not actively resisting arrest or attempting to evade arrest by flight.  Moreover, even if Mr. Quarles had been actively resisting arrest, he was well within his rights to do so because his arrest was unlawful under Louisiana law.  This factor weighs overwhelmingly in Mr. Quarles' favor.

54.

The force applied to Mr. Quarles by defendants McClaran and Hammontree was both excessive and objectively unreasonable.

**COUNT III – 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS CROPPER AND CITY OF MINDEN, LOUISIANA UNDER *MONELL* FOR DELIBERATELY INDIFFERENT FAILURE TO ADEQUATELY TRAIN AND SUPERVISE MCCLARAN AND HAMMONTREE**

55.

The preceding paragraphs are incorporated by reference.

56.

Upon information and belief, defendant Cropper, as the Chief of Police for the Minden Police Department, is a policymaker for the City of Minden.  In this case, the execution of the City of Minden's policy or custom inflicted injury upon Mr. Quarles.

57.

Mr. Quarles is informed and believes, and on the basis of such information and belief alleges, that defendant City of Minden and its decisionmaker, defendant Cropper, acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional rights of Mr. Quarles, and all other such persons similarly situated.  In addition, defendant City of Minden and its decisionmaker, defendant Cropper maintained, enforced, acquiesced in, permitted, tolerated, and applied policies, practices, and/or customs and usages that constituted gross violations of the constitutional rights of citizens, including Mr. Quarles, by, among other things:

A.     Subjecting Mr. Quarles and other law-abiding citizens to unreasonable and excessive uses of force against their persons;

B.     Subjecting Mr. Quarles and other law-abiding citizens to wrongful arrests for nonexistent violations of Louisiana Revised Statutes 14:108, entitled "Resisting an Officer;"

C.     Failing to properly train and/or supervise its police officers; and

D.     Selecting, retaining, and assigning employees (in particular defendants McClaran and Hammontree) to interact with the public when those employees have demonstrable propensities for wrongful arrests, excessive force, violence, and other misconduct.

58.

"[A] municipality is liable under § 1983 only if its 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'  The plaintiff can prove the existence of a municipal policy through, *inter alia*, the actions of the municipality's legislative body or an individual with final decision-making authority.   The plaintiff can also prove the existence of a municipal custom by pointing to a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (internal citations omitted).

59.

The City of Minden caused the unconstitutional torts committed by defendants McClaran and Hammontree on February 1, 2022, through a governmental custom or policy to violate Mr. Quarles' constitutional rights and by failing to adequately train and/or supervise its officers and/or to prevent discipline for constitutional violations caused by members of the Minden Police Department.

60.

Defendant Cropper, as the Chief of Police during the relevant periods provided herein, is a final policymaker.

61.

There exists or existed a policy of the City of Minden to violate Mr. Quarles' Fourth and Fourteenth Amendment rights.

62.

There also exists or existed a policy of the City of Minden to fail to properly train its police officers so as to prevent constitutional violations committed by members of the Minden Police Department.

63.

There also exists or existed a policy of the City of Minden to fail to properly supervise its police officers so as to prevent or discipline constitutional violations committed by members of the Minden Police Department.

64.

As demonstrated above, there are persistent, widespread practices of members of the Minden Police Department, which are so common and well-settled as to constitute a custom that fairly represents municipal policy.

65.

Such policies are to (1) subject law abiding citizens to unreasonable and excessive uses of force against their persons; (2) wrongfully arrest innocent citizens for nonexistent violations of Louisiana Revised Statutes 14:108 and other criminal statutes; (3) failing to properly train and/or supervise its officers to prevent repeated violations of innocent citizens' civil rights; and (4) selecting, retaining, and assigning employees (in particular defendants McClaran and Hammontree) to interact with the public when those employees have demonstrable propensities for wrongful arrests, excessive force, violence, and other misconduct.

66.

It is obvious that the highly predictable consequence of not properly training and/or supervising Minden police officers was that they would violate citizens' rights protected by the United States Constitution.

67.

Defendant McClaran has a history of violating the constitutional rights of law abiding citizens.  Defendant McClaran has been repeatedly sued for such violations of citizens' constitutional rights.  *See, e.g., Grider v. City of Minden*, No. 5:11-CV-710 (W.D.La. 2011); *Robertson v. City of Minden*, No. 5:15-CV-2289 (W.D.La. 2015); *Turner v. City of Minden*, No. 5:10-CV-1842 (W.D. La. 2010).  In 2013, a federal jury found that defendant McClaran had violated the constitutional rights of an innocent citizen, Shannon Kjamal Turner, by using excessive force and assessed punitive damages against defendant McClaran.  In spite of this, in 2015, defendant McClaran was named "Officer of the Year" by the Minden Police Department.

68.

Likewise, defendant Hammontree has a history of violating the constitutional rights of law abiding citizens.  Defendant Hammontree has been sued several times for such violations of citizens' constitutional rights.  *See, e.g., Grider v. City of Minden*, No. 5:11-CV-710 (W.D.La. 2011); *Robertson v. City of Minden*, No. 5:15-CV-2289 (W.D.La. 2015); *Sarameh v. Pringle*, No. 4:04-CV-283 (N.D. Ga. 2004)

69.

The City of Minden was the moving force behind Mr. Quarles' injuries and the policies caused the violations of Mr. Quarles' constitutional rights.

70.

Defendant Cropper ratified the violations committed by defendants McClaran and Hammontree.

71.

Mr. Quarles suffered damages as a result of these violations.

**COUNT IV – 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS MCCLARAN AND HAMMONTREE FOR ILLEGAL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

72.

The preceding paragraphs are incorporated by reference.

73.

Mr. Quarles has a constitutional right against unlawful searches under the Fourth and Fourteenth Amendments to the United States Constitution.

74.

Mr. Quarles has a reasonable expectation of privacy in his automobile.

75.

Following Mr. Quarles' wrongful arrest, officers from the Minden Police Department unlawfully searched Mr. Quarles' automobile.

76.

This search resulted in the interior of Mr. Quarles' automobile being ransacked.  In addition, a $30-$40 Circle K gift card, that had been in Mr. Quarles' car prior to his arrest, was taken.

77.

The officers' intrusion into Mr. Quarles' automobile constituted a search.

78.

The officers' intrusion into Mr. Quarles' automobile was done without a lawful warrant and in the absence of an exception to the warrant requirement or consent by Mr. Quarles.

79.

Mr. Quarles suffered damages as a result of these violations.

**COUNT V – STATE LAW CLAIM AGAINST DEFENDANTS FOR FALSE ARREST AND MALICIOUS PROSECUTION**

80.

The preceding paragraphs are incorporated by reference.

81.

Defendants McClaran and Hammontree were personally and directly involved in the arrest of Mr. Quarles and knew, at the time the arrest was made, that their arrest of Mr. Quarles was wrongful.

82.

Defendants Cropper and City of Minden, by deliberately and/or recklessly failing to train and/or supervise their subordinate officers caused their subordinates to deprive Mr. Quarles of his clearly established constitutional rights not to be deprived of liberty without due process of law, not to be illegally seized and detained, not to be the subject of unreasonable, excessive force, not to have his automobile illegally searched, and not to be deprived of his rightful property.

83.

Moreover, defendants Cropper and City of Minden allowed their subordinates to act with impunity in an environment in which those subordinates were not supervised, disciplined, or trained, and in which those subordinates knew that their violations of Mr. Quarles' constitutional rights would be facilitated, approved, and/or condoned.

84.

Defendants McClaran's and Hammontree's actions were in violation of clearly established constitutional law, and no reasonable law enforcement officer would have believed that the defendants' actions were lawful.

85.

As a direct and proximate result of defendants' actions, Mr. Quarles was wrongly arrested, charged, detained, physically abused, and suffered the other grievous injuries and damages set forth herein.

## COUNT VI – STATE LAW CLAIM AGAINST DEFENDANTS MCCLARAN AND HAMMONTREE FOR BATTERY

86.

The preceding paragraphs are incorporated by reference.

87.

Defendants McClaran's and Hammontree's conduct, set forth in detail above, constitute an unlawful battery under Louisiana law.

88.

Mr. Quarles suffered physical and emotional damages as a result of this battery.

**COUNT VII – STATE LAW CLAIM AGAINST DEFENDANTS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

89.

The preceding paragraphs are incorporated by reference.

90.

The above-described actions by defendants constitute extreme and outrageous conduct that caused Mr. Quarles severe emotional distress.

91.

The acts described above exceed all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.

92.

 Defendants either desired to inflict severe emotional distress on Mr. Quarles or knew that severe emotional distress would be certain or substantially certain to result.

**COUNT VIII – STATE LAW CLAIM AGAINST DEFENDANTS FOR CONVERSION**

93.

The preceding paragraphs are incorporated by reference.

94.

As alleged above, prior to the illegal search of his automobile, Mr. Quarles possessed a $30-$40 Circle K gift card.  Following the illegal search of his automobile and upon return of the automobile to Mr. Quarles, this Circle K gift card was no longer in Mr. Quarles' automobile.

95.

The taking of Mr. Quarles' Circle K gift card constitutes a wrongful conversion under Louisiana law, entitling Mr. Quarles to damages.

## COUNT IX – CLAIM FOR VIOLATIONS OF THE LOUISIANA CONSTITUTION AGAINST ALL DEFENDANTS

96.

The preceding paragraphs are incorporated by reference.

97.

The Louisiana State Constitution, like the United States Constitution, guarantees a person's right to be secure in his person and effects from unreasonable seizure, to equal protection of the law, to due process of law, and to additional rights.

98.

By reason of the same intentional, malicious, reckless, and deliberate conduct that violated Mr. Quarles' rights under the United States Constitution, defendants' conduct violated the rights guaranteed to Mr. Quarles under the Louisiana State Constitution.

## JURY DEMAND

99.

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment, Mr. Quarles requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Benjamin Quarles demands a judgment for actual damages against the defendants, punitive damages against the individual defendants,

attorneys' fees, and costs, all as available by relevant statutes and laws, and such other

and further relief as this Court may deem appropriate.

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**

 /s/ J. Todd Benson
J. Todd Benson, T.A.
La Bar Roll No. 23648
333 Texas Street, Suite 1400
P.O. Box 1764 (71166-1764)
Shreveport, Louisiana 71101
Telephone: (318) 227-3500
Facsimile:  (318) 227-3820
Email: toddbenson@arklatexlaw.com

ATTORNEY FOR BENJAMIN L. QUARLES